**Affirmed and Majority and Concurring Opinions filed June 19, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00107-CV

### IN THE INTEREST OF G.M.G., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2012-04584J**

## M A J O R I T Y   O P I N I O N

In this appeal, appellant M.J.G. (the Father) appeals the termination of his parental rights to his son, G.M.G. (the Child). The Father brings two issues asserting (1) the trial court erred in granting a partial summary judgment on the predicate termination grounds, and (2) the evidence is legally and factually insufficient to support the court's finding that termination of his parental rights is in the Child's best interest. We affirm.

### I.     PROCEDURAL AND FACTUAL BACKGROUND

The Child who is the subject of this proceeding was born September 5, 2011, and he was two years old at the time of trial. The record reflects that the Father had a history of violent and criminal behavior, including family violence, leading to the

initiation of the underlying suit for protection of the Child. According to the record, the Father pled guilty to sexual assault of a child in 2001 and was placed on deferred adjudication probation for ten years. As a result of this offense, the Father is required to register as a sex offender pursuant to Chapter 62 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 62.001—.408. The record also reflects that the Father has a stalking conviction, a conviction for violating a protective order, and he pled guilty to a charge of burglary of a habitation.

The Child's mother (the Mother) reported that the Father physically abused her and threatened her children. The Father continued to threaten the Mother with violence after the Child was born. The Mother described the Father's threat to slit her throat and throw the Child into a river, made shortly before the Child was removed from the home. The Father intimidated the Mother's older son both psychologically and physically, causing him to cower in fear of the Father. In March of 2012, the Mother fled to San Antonio with the two children after the Father choked her until she was unconscious. She later returned to the home, however.

On July 27, 2012, the Texas Department of Family and Protective Services (the Department) filed its original petition for protection and conservatorship of the Child.[1] The Child was placed in the emergency temporary conservatorship of the Department based on a finding that there was a continuing danger to the Child. *See* Tex. Fam. Code § 262.104. After an adversary hearing, the court issued temporary orders continuing the Department's conservatorship.

Shortly after the Child was removed from the home, the Father moved out. He was arrested on September 28, 2012, and subsequently convicted and sentenced to two years in prison for failing to update his address as part of the requirements

---

[1] An older half-sibling, L.S., Jr., was included in the original petition, but claims involving L.S., Jr. were later non-suited.

of his court-ordered sex-offender registration. The Father did not have any contact with the Child after his arrest.

During the pendency of the case, the Mother participated in domestic violence and individual counseling. The Department was satisfied with her progress and returned the Child to her care approximately a year before trial.

On August 30, 2012, the Department moved for a partial summary judgment on the predicate grounds for termination of the Father's parental rights pursuant to Sections 161.00l(1)(L) and 161.00l(l)(Q) of the Texas Family Code.[2] These sections provide in relevant part:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> (L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:
>
> \*   \*   \*
>
> (vi) Section 22.011 (sexual assault);

[2] Although the Father does not challenge the use of summary judgment as a procedural vehicle for adjudicating the statuory elements of subsections L and Q, we note that summary judgments are uncommon, but not unprecedented, in termination proceedings. *See Dowell v. Dowell*, 276 S.W.3d 17, 21 (Tex. App.—El Paso 2008, no pet.) (reversing a summary judgment and holding the evidence did not conclusively establish that termination was in the best interest of the children, even though the Father conceded the statutory grounds, in a private termination proceeding); *In re K.P*, No. 05-07-01572-CV, 2008 WL 4571828, at \*2 (Tex. App.—Dallas Oct. 15, 2008, pet. denied) (mem. op.) (holding mother waived her challenge to a partial summary judgment by failing to raise it in her statement of points on appeal); *In re T.H.*, No. 05-99-01142-CV, 2000 WL 1853042, at \*2 (Tex. App.—Dallas Dec. 19, 2000, no pet.) (not designated for publication) (holding summary judgment is a proper method of disposing of a termination case when no genuine issues of material fact exist). Thus, whether all or part of the Department's burden may be met through motion for summary judgment is neither raised nor resolved by this opinion.

\* \* \*

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:

(i) conviction of an offense; and

(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

Tex. Fam. Code §§ 161.001(1)(L)(vi); 161.001(1)(Q).

The Department provided copies of the Father's criminal records to support its motion. The Father filed a response to the Department's motion, challenging the sufficiency of the evidence to show that the Father was the same person as the criminal defendant named in the records attached to the Department's motion. On October 29, 2013, the Department supplemented its motion with additional identifying information. After reviewing the evidence and considering argument of counsel, on October 31, 2013, the court granted the Department's motion for partial summary judgment on both subsections L and Q.

The issue of whether termination of the Father's parental rights is in the best interest of the Child was tried to the court. On January 9, 2014, the trial court signed a final decree terminating the Father's parental rights to the Child. The Mother was appointed the Child's sole managing conservator. The Father then brought this appeal.

## II.    BURDON OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the

4

child not be sacrificed merely to preserve that right.").

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by Section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *In re A.B.*, No. 13-0749, ___ S.W.3d ___, 2014 WL 1998440, at *5 (Tex. May 16, 2014). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007. Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## A. Summary Judgment Standard

In a traditional summary judgment proceeding, the moving party carries the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review summary judgments de novo. *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Dowell v. Dowell*, 276 S.W.3d 17, 20 (Tex. App.—El Paso 2008, no pet.).

We take as true all evidence favorable to the nonmovant and resolve any doubt in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable fact finder could, and disregarding evidence contrary to the nonmovant unless a reasonable fact finder could not. *Mann Frankfort*, 289 S.W.3d at 848. If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine,

material fact issue sufficient to defeat summary judgment. *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 529 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)).

## B. Legal and Factual Sufficiency Standards

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *Id* at 345. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* In reviewing the evidence for factual sufficiency, we give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003) (explaining that in a termination case, an appellate court should not reweigh disputed evidence or evidence that depends on a witness's credibility).

### III. PARTIAL SUMMARY JUDGMENT

The Department moved for summary judgment on both alleged predicate grounds for termination, Subsections L and Q of Section 161.001(1). The Department was required to prove only one of these grounds to satisfy the first prong of section 161.001. *In re C.M.C.*, 273 S.W.3d 862, 874 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Accordingly, we will review the summary judgment evidence regarding Subsection L to determine whether the Department conclusively established such ground for termination.

#### A. Summary Judgment Evidence

The Department attached certified copies of records of the Father's criminal offenses to its motion for partial summary judgment. Specifically, the Department included records showing that the Father received 10 years deferred adjudication probation on his guilty plea to sexual assault on a child on December 10, 2001, in cause number 10540 in the 12th District Court in Madison County, Texas. Subsection L expressly includes an offense for which a defendant receives deferred adjudication. *See* Tex. Fam. Code § 161.001(1)(L). Sexual assault of a child is an offense listed in subsection L. *See id.* (listing Section 22.011 of the Texas Penal Code, which includes the offense of sexual assault of a child in subsection (a)(2)).

The Father filed a response to the motion for partial summary judgment. The only issue he raised in response was his claim that there was no evidence that he was the same person as the criminal defendant who pled guilty to sexual assault of a child.[3] The Department then filed a supplemental motion for partial summary

---

[3] The Father has not argued the offense of sexual assault of a child failed to constitute conduct that "caused the death or serious injury of a child," as required under subsection L. *Cf. R.F. v. Tex. Dep't of Fam. & Prot. Servs.*, 390 S.W.3d 63, 73 (Tex. App.—El Paso 2012, no pet.) (addressing challenge to the sufficiency of the evidence to prove the father's conduct "caused the death or serious injury of a child"); *see also In re L.S.R.*, 92 S.W.3d 529 (Tex. 2002) (per curiam) (denying petitions for review, "but disavow[ing] any suggestion that molestation of a four-year-old, or indecency with a child, generally, does not cause serious injury.").

judgment on October 29, 2013, including additional evidence in the form of certified copies of criminal records containing identifying information. Specifically, the supplementation included the indictment for sexual assault of a child, which contains the Father's date of birth, hair and eye color, height, and social security number. The Department also provided a "pen packet" with the Father's fingerprints and photographs. The records in the pen packet connect the offense for failing to comply with the sex offender registration requirements with the sexual assault of a child offense, which was further identified by the disposition date of "121001." The Department also included in its supplementation the DNA test results showing that the Father is the Child's biological father. In addition, the Department provided a certified copy of its original petition.

The Father argues that the record contains no evidence that the trial court granted leave for the Department to supplement its motion for summary judgment. *See* Tex. R. Civ. P. 166a(c) (requiring a summary judgment motion and supporting affidavits to be filed twenty-one days before the hearing unless leave of court is obtained). Without the court's leave, the Father asserts that we must presume the trial court did not consider the late-filed evidence. *See e.g., Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (presuming the trial court did not consider a late-filed affidavit where nothing in the record indicated the court granted leave to file it).

First, the record indicates that the trial court granted the Department leave to supplement its motion. The hearing on the Department's supplemental motion was held on October 31, 2013. At the beginning of the hearing, counsel for the Department announced, "Judge, you've asked for me to collect more evidence on my motion for summary judgment and you were gonna [*sic*] take it under advisement." The record from the hearing on the summary judgment motion also reflects that the Department presented the court with each exhibit attached to its

supplemented motion. The Father's counsel did not object that the supplemented evidence was untimely or made without leave of court.

In addition, the record shows that the trial court affirmatively indicated in its summary judgment order that it considered the late-filed evidence. At the close of the hearing, the trial court signed two orders, both of which state, "the Court considered the Petitioner's Supplemented Motion for Partial Summary Judgment." We will treat late-filed evidence as part of the summary-judgment record as long as the trial court affirmatively indicated in the record that it accepted or considered the evidence. *Alphaville Ventures, Inc. v. First Bank*, ___ S.W.3d ___, 2014 WL 1318453, at *3 (Tex. App.—Houston [14th Dist.] Apr. 1, 2014, no pet. h.). Leave to file summary judgment evidence may be reflected in a separate order, a recital in the summary judgment, or an oral ruling in the reporter's record from the hearing. *Id.* The record establishes that the trial court considered the late-filed summary judgment evidence in this case. Therefore, we will treat the supplemental evidence as part of the summary judgment record.

## B. Analysis

The Father first argues that the Department was required to establish his paternity before seeking termination of his parental rights, citing the language in Section 161.001(1). Section 161.001(1) provides that termination of the parent-child relationship may be ordered if the court finds "the parent" has engaged in a list of grounds for termination, including subsection L. *See* Tex. Fam. Code § 161.001(1). Chapter 161 expressly provides, however, that "the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father." Tex. Fam. Code § 161.002(a). This court has previously rejected a contention that the trial court is required to determine paternity before an alleged father is required to comply with Section 161.001(1). *See In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *3 (Tex. App.—

9

Houston [14th Dist.] Aug. 30 2012, pet. denied) (mem. op.) (holding the Department properly sought termination even though the father's paternity had not been established). Moreover, even if such evidence were required, we have previously determined that the Department's supplemental motion for partial summary judgment, which included the DNA results establishing the Father's paternity, is a part of the summary judgment evidence.

The Father also contends on appeal that the Department was required to produce expert testimony linking his fingerprints to the convictions, as is required in a criminal proceeding. *See, e.g., Beck v. State,* 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). In a criminal case, there must be "proof beyond a reasonable doubt," which requires a "high degree of certainty." *See Lane v. State,* 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). The criminal standard does not apply here. The Department was required to prove by clear and convincing evidence that the Father is the defendant named in the criminal records it provided as summary judgment evidence. *See* Tex. Fam. Code §161.001. "Clear and convincing" proof is an intermediate standard "falling between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings." *Vardilos v. Vardilos*, 219 S.W.3d 920, 922 (Tex. App.—Dallas 2007, no pet.) (citing *In re G.M.*, 596 S.W.2d 846, 847 (Tex.1980)); *see also In re M.L.S.*, No. 01-97-00886-CV, 1998 WL 414701, at *2 (Tex. App.—Houston [1st Dist.] Jul. 16, 1998, no pet.) (holding that, due to lower standard of proof than criminal cases, evidence was sufficient to support involuntary termination of mother's parental rights based upon a prior conviction without the necessity of expert testimony to verify her fingerprints). Our review in a termination proceeding must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. *In re C.H.*, 89 S.W.3d at 26.

The certified copies of the judgment and other documents related to the

10

sexual assault of a child case that the Department provided in support of its motion for partial summary judgment on subsection L contain the Father's full name and birth date. In addition, documents related to his criminal history include the Father's address. The full name, address, and birth date shown in the criminal records included as summary judgment evidence match those on the Department's petition in this case.

We conclude the Department's evidence conclusively establishes that the Father is the same person named in the criminal case for sexual assault of a child to support termination under Subsection L. Because the motion facially established the Department's right to partial summary judgment as a matter of law, the burden shifted to the Father to raise a genuine material fact issue sufficient to defeat summary judgment. The Father failed to meet that burden. In his response, he merely attacked the sufficiency of the Department's proof that he was the defendant named in the copies of the criminal records, but he offered no contradictory proof. Accordingly, the trial court did not err in granting the Department's motion for partial summary judgment on Section 161.001(1)(L). We overrule the Father's first issue.

## IV.  BEST INTEREST

### A. Presumptions and Best-Interest Factors

There is a strong presumption that the best interest of the child is served by keeping the child with the natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Department has the burden to rebut this presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To rebut this presumption, there must be clear and convincing evidence of the natural parent's present unfitness. *In re C.J.S.*, 383 S.W.3d 682, 691 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

11

In determining whether termination is in the best interest of the child, we may consider, among other evidence, the *Holley* factors, which are: (1) the child's desires; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the person seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors are not exhaustive, nor must all the factors be proved as a condition precedent to terminate parental rights. *In re C.H.*, 89 S.W.3d at 27.

For cases in which the Department or another government agency is the petitioner, Section 263.307(a) of the Texas Family Code provides that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code § 263.307(a). Section 263.307(b) lists the factors to consider in determining whether a parent is "willing to provide the child with a safe environment." *Id.* § 263.307(b). Those factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of

12

substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*. With these considerations in mind, we review the evidence.

## B. Evidence

The Mother testified that the Child was two years old and had been returned to her custody for almost a year. She stated that the Child is doing well since his return to her care. She and the Child have moved to California. The Mother works as a bookkeeper during the day and a server at night. She testified that she has developed a support group through her family, church, and close friends, and she has filed for divorce from the Father.

The Mother testified the Father lived with the family off and on during the first nine or ten months of the Child's life. She stated the Child does not now know who the Father is; there is no relationship between them. Although the Father occasionally helped feed the Child and change his diapers when he lived with

13

them, the Father has not supported the Child. The Mother testified she has been responsible for providing food and shelter for the family. According to the Mother, the Father worked only two or three weeks during the time he lived with the family. The Mother acknowledged that the Father's family provided some support shortly after the Child was born.

The Mother testified that she believed her living situation at time of trial was safer than when the Father was still involved in her life. Further, it was her belief that terminating the Father's parental rights would be in the Child's best interest based on the Father's threatening behavior. The Father has made threats on her life, including saying that he was going to slit her throat from ear to ear, and he threatened to throw the Child into a river so that the Mother would never find his body. These threats caused the Mother great concern for the Child's safety.

In addition, the Mother testified that the Father traumatized her older son on a regular basis. She described the Father's conduct as emotional battering. He also physically threatened the boy, raising his fist to him. She described how her older son cowered in fear of the Father. The Mother was afraid the Father would treat the Child the same way he treated her older son.

The Mother described the Father's abuse as escalating during 2012, with increasing physical violence. She said on two occasions, the Father choked her until she was unconscious. In March of 2012, after one of these incidents, she fled to San Antonio with the children out of fear of the Father. The Mother testified that she had obtained a protective order against the Father. Despite a no-contact order issued by the court in this case, in addition to the protective order, the Father attempted to send the Mother letters in care of her previous employer while he was incarcerated. After his release from prison, the Mother believed the Father was stalking her. She testified he had repeatedly contacted one of her friends.

The Mother acknowledged she later moved back in with the Father after she

fled to San Antonio. She testified that she did so in part out of fear and in part because of a false hope that things would be different and the cycle of abuse would stop. She acknowledged that she recanted some of the allegations regarding domestic violence that she had made to the Department. She has since received domestic violence counseling, as well as individual counseling, while this case has been pending. The Department was satisfied that she had addressed these issues about dealing with abusive conduct. The Mother testified that she had learned to protect her children first and she now understands how to do that.

The Department's case worker, Brittney Price, testified that the Department was satisfied that the Child's needs were being met now that the Child has been returned to the Mother's care. Price testified that she believed it was in the Child's best interest for the Father's parental rights to be terminated and for the court to name the Mother as the Child's sole managing conservator.

The Father testified that he had been out of prison for thirty-four days at the time of trial. He testified that he participated in services while incarcerated through a program called "Changes." He did not start participating in these services until July of 2013, less than six months before trial. He testified that he attended programs for four hours a day, five days a week. The Changes program included parenting classes, substance abuse programs, and classes for personal development and anger management. He explained that the parenting sessions covered how to break the cycle of bad parenting, how to be a better parent, and how to be a stern, but loving, parent. He testified he was never a bad father, but he had learned to be more patient, caring and understanding. Certificates of completion for "Changes" and a drug awareness program were admitted in evidence, as well as a report showing the hours of class the Father attended.

The Father also participated in anger management sessions. He admitted that anger management was a problem he faced and he had very little patience. He

15

testified the classes teach "you to know what's setting you off and what's going to stop you in learning to find ways to get around anger and deal with it in other ways." He testified the classes showed videos of "testimonies" from others with anger problems about ways to "corral your anger and use it in a positive way, instead of like a negative way, and learning self-control and patience with yourself and your surroundings that make you angry." He asserted the classes showed him how to be more patient and understanding.

The Father also testified he attended substance abuse classes. He learned about what triggers a person to abuse substances. He testified he was never "into drugs," but alcohol was his issue. He denied he was an alcoholic, but testified he drank too much. He stated he has learned that "[y]ou can't drink and try to be a parent." He has enrolled in Alcoholics Anonymous and attends twice a week. He also testified he has arranged for weekly family relationship counseling since his release from prison. He testified he will participate in services for "however long it takes to beat the beast." The Father testified he had recently found employment and would start work the next day. He hoped to have his own residence within the next thirty days. He has not been ordered to pay child support, but he is willing to do so.

The Father testified that after he moved out of the home when the Child was taken into the Department's custody, he kept in contact with the Mother. About two months after he left, the Mother informed the police where he was working and he was arrested on the charge of failing to notify authorities of his change of address in violation of the requirements for sex-offender registration.

The Father admitted he is a registered sex-offender and is currently on parole after having failed to update his address with the sex-offender registry. He acknowledged that he was sentenced to two years in prison and served thirteen months before being released on parole. The terms of his parole restrict him from

being around all children other than his son, whom he may visit if there is a "chaperone." The Father acknowledged that the terms of his parole also do not permit him to travel outside the county. He admitted that the Mother currently has a protective order against him, and he has had other protective orders issued against him in the past. The Father acknowledged he had previous convictions, in addition to the sexual assault case, for stalking, violation of a protective order, and burglary of a habitation. Records of these convictions were admitted at trial.

The Father acknowledged that he had a four-year-old daughter living in San Antonio, although he had not been established as her father through DNA testing. He testified he had "called and set up for child support and visitation because he wanted to meet his daughter," but he was unable to attend the court date and was "defaulted." He does not see his daughter.

The Father testified that his family, which includes his parents, sister, brother, stepbrother, and his former stepmother, is his support system. He asserted that these family members will help provide for his son. Even after this case began, his parents helped the Mother on several occasions. He testified that he bonded with his son the first ten months of his life. He changed his diapers and fed him every day. He loves his son, and he believes his son loves him. He wants to teach his son to play sports, do well in school and respect his family. Contrary to the Mother's testimony, he stated he worked during the time he lived with the Mother and the Child. He claimed he was only out of work about three months during that time. The Father acknowledged that he had not supported his Child during the pendency of this case because he was incarcerated and had not been ordered by a court to pay child support.

The Father acknowledged threatening to "whoop" the Mother's older son and spanking him with his hand and a belt, but denied every threatening him with his fist. He also denied that he threatened the Mother, choked her, or threatened to

17

throw the Child in the river. He testified he never physically abused his son.

The Father's stepmother also testified. She was present at the hospital when the Child was born, and he is the only one of her thirteen grandchildren that she saw at birth. She testified the Father was very protective of his son. He was also affectionate toward the Child and provided food, housing, and clothing for him. She never saw the Father assault the Mother or endanger the Child. She and her husband would help the Father financially and emotionally support the Child. In her opinion, the Father's parental rights should not be terminated because he should be given a chance to prove he can be the parent he is supposed to be.

## C. Analysis

We begin our analysis by noting that evidence supporting termination under one of the grounds listed in section 161.001(1) can also be considered in support of a finding that termination is in the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(1) grounds and best interest). Thus, it is appropriate to consider at the outset that the Father pled guilty to sexual assault of a child.

In addition, the physical and emotional danger to the Child is a prominent *Holley* factor the trial court may have considered in this case. Similarly, one of the statutory best-interest factors courts are to consider is whether there is a history of abusive or assaultive conduct by the child's family. *See* Tex. Fam. Code § 263.307(b)(7). A parent's abusive or endangering conduct that occurred before the child's birth may be considered in a best-interest analysis. *See In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *11 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op.). Abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In addition to the Father's criminal past, evidence of the Father's domestic violence supports a

finding of endangerment to the physical or emotional well-being to the Child. *See id.*

The Department provided evidence of the Father's convictions for stalking, violation of a protective order, and felony burglary of a habitation. He had been incarcerated both before and during the Child's life. The Father admitted he had been subject to several protective orders. The evidence showed the Father engaged in domestic violence against the Mother and abusive conduct toward the Mother's older son. The Father acknowledged he struggled with anger management and had problems with alcohol abuse. The trial court, as the fact finder, may have considered the Father's pattern of behavior in evaluating his ability to provide the Child with a safe home. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (observing that incarcerated parent's absence from the child's daily life, inability to support the child, and parent's commission of criminal acts subjecting him to possibility of incarceration can negatively impact the child's emotional well-being); *see also In re C.J.*, No. 14-07-00838-CV, 2008 WL 4447687, at *5 (Tex. App.—Houston [14th Dist.] July 10, 2008, no pet.) (mem. op.) (stating a "parent's past behavior is indicative of the quality of future care that the parent is capable of providing" and is relevant to a best-interest determination). While we recognize that a parent's imprisonment will not, standing alone, constitute endangering conduct, the court may consider the effect of the parent's course of conduct on the well-being of a child. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–34 (Tex. 1987).

The trial court also could have reasonably determined the first statutory factor recited above weighed in favor of finding termination to be in the Child's best interest. *See* Tex. Fam. Code § 263.307(b)(1) (child's age and vulnerabilities). The Child is very young, only two years old at time of trial. The trial court was entitled to consider the Child's young age and his physical and emotional

vulnerability. The Child is completely dependent on adults for his care. The Mother established her ability to provide that care.

The evidence of the Child's current situation showed that he had been returned to his Mother's care for almost a year at the time of trial and she provided for his needs in a safe home environment. *See* Tex. Fam. Code § 263.307(b)(12). The Mother had shown her willingness to effect positive changes to improve her situation, relevant to the tenth and eleventh statutory factors recited above. *See* Tex. Fam. Code § 263.307(b)(10), (11). The Mother had undergone counseling and complied with the services required by the Department. The Mother had moved away from the Father, filed for divorce, and had established a support system through her family, friends, and church. *See* Tex. Fam. Code § 263.307(b)(13). She was employed and able to support the Child, and she testified she did not need child support from the Father, as she had always supported her children.

With regard to the Father's ability to care for the Child's needs, the Father did not have his own residence. He testified that he had obtained a job, but had not started work yet. "A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re J.T.G.*, No. 14–10–00972–CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, no pet.) (mem. op.). The Father asserted he would pay child support as soon as he began to receive wages, but the trial court was entitled to discredit this testimony in light of the Father's sporadic work history, frequent arrests, and failure to provide support to the Child in the past. The fact finder in this case was free to make its own credibility assessments, resolve conflicts in the testimony, and decide what weight to give the witnesses' testimony. *See In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005) (recognizing the fact finder is the "sole arbiter when assessing the credibility and demeanor of witnesses").

The Father acknowledged that he had not seen the Child in over a year, since

the Child was ten months old. The Mother testified the Child did not know the Father and had no relationship with him. The Father testified that he had bonded with the Child during the first ten months of his life. The Father acknowledged, however, that he has another child, a four-year-old daughter, he does not see. The Father's past performance as a parent—apart from his criminal history—could certainly have a bearing on his fitness to provide for the Child. *See In re C.H.*, 89 S.W.3d at 28.

The Father had recently participated in services in prison, but he had not demonstrated that his behavior had changed. The Father testified about the services he had completed while incarcerated, but he did not begin these services until about a year after the Child was taken into the Department's care. "Significant evidence of improved conduct, especially in short duration, does not conclusively negate the probative value of a history of irresponsible choices." *In re J.O.A.*, 283 S.W.3d at 343.

After reviewing the evidence in the light most favorable to the trial court's best-interest finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of the Father's parental rights is in the Child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The disputed evidence that a reasonable fact-finder could not have credited in favor of the trial court's best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction in the truth of the challenged finding. *See H.R.M.*, 209 S.W.3d at 108.

Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of the parent-child relationship between the Father and the Child is in the Child's best interest. Accordingly, we overrule the Father's second issue.

# V. CONCLUSION

Having overruled the Father's issues, we order the trial court's judgment affirmed.

/s/    Sharon McCally
Justice

Panel consists of Justices Christopher, Jamison, and McCally. (Justice Christopher filed a concurring opinion which Justice Jamison joins.)