

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00408-CV

**IN THE INTEREST OF M.C.L.**, K.R.L., and M.C.L., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA01348
Honorable Richard Garcia, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  November 29, 2017

AFFIRMED

This is an accelerated appeal from the trial court's order terminating appellant father's ("Father") parental rights to his three children.[1]  On appeal, Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interests.  We affirm the trial court's order of termination.

## BACKGROUND

The Texas Department of Family and Protective Services ("the Department") became involved with the family based on allegations of drug abuse, domestic violence, neglectful

---

[1] Two of the three children involved in this appeal share the same initials.  Thus, to refer to the children individually when necessary and to protect their identities, we shall refer to the children by the following pseudonyms and/or their ages at the time trial began: (1) John — a nine-year-old boy; (2) James — a six-year-old boy; and (3) Joseph — a four-year-old boy.  *See* TEX. R. APP. P. 9.8(2) (stating that in parental-termination appeals, minors must be identified by alias unless court orders otherwise).

supervision, and physical neglect. The Department placed John with his maternal grandparents and the two younger boys with their maternal aunt and uncle. The Department subsequently filed a petition to terminate Mother and Father's parental rights.[2] During the case, the Department created a service plan for Father, which required, among other things, that he: (1) engage in and complete services relating to domestic violence, substance abuse, and parenting; (2) obtain a psychiatric and psychological assessment; and (3) maintain stable employment and housing. The trial court ordered Father to comply with each requirement set out in the plan. The court held the statutorily required status and permanency hearings, and ultimately, the matter moved to a final hearing, during which the Department sought to terminate Father's parental rights.

At the hearing, the trial court heard testimony from Jennifer DeLong, the only Department caseworker involved in the case, and C.B., the children's maternal aunt. At the conclusion of the hearing, the trial court terminated Father's rights, finding he constructively abandoned the children and failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his children.[3] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O) (West Supp. 2016). The trial court further found termination of Father's parental rights would be in the children's best interests. *See id*. § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Father's parental rights. Thereafter, he perfected this appeal.

---

[2] Prior to the final hearing, the children's mother filed an affidavit of relinquishment. Her parental rights were terminated based on the affidavit. Mother did not file a notice of appeal challenging the termination. Accordingly, she is not a party to this appeal.

[3] In his brief, Father contends the trial court found only a failure to comply with the service plan. We disagree. On the record, the trial court specifically stated it was terminating Father's parental rights based on two grounds — constructive abandonment and failure to complete the service plan. In the written order of termination, the trial court lined through those grounds upon which termination was not granted using a large "X." When the trial court place the "X" through the paragraph above the constructive abandonment ground, one "leg" of the "X" carried down to the constructive abandonment paragraph. However, the trial court used a "squiggly line" to indicate the leg of the "X" was not intended to apply to the constructive abandonment paragraph. This comports with the trial court statements on the record. Accordingly, we hold the grounds for termination included both constructive abandonment and failure to complete the service plan.

**ANALYSIS**

On appeal, Father does not challenge the evidence with regard to the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(N), (O). Rather, he merely challenges the legal and factual sufficiency of the evidence in support of the trial court's finding that termination was in the best interests of the children. *See id.* § 161.001(b)(2).

### *Standard of Review*

A parent's right to his child may be terminated by a court only if the court finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of his child. *Id.* § 161.001(b). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to his child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015). When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that determination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*,

180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

### *Best Interests — Substantive Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2012) (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider, in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by his past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

### *The Evidence*

As noted above, the Department presented two witnesses at the final hearing — the Department caseworker and the children's maternal aunt. Through these witnesses, the Department sought to establish, in addition to the grounds for termination, that termination would be in the best interests of the children. In analyzing the evidence within the *Holley* framework, we

note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

1. *Desires of the Children*

At the time of trial, the children were nine, six, and four years old. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. Although none of the children testified at trial, Ms. DeLong stated the oldest child, John, "didn't seem to care one way or the other" regarding his placement. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. As for the two younger boys, she stated they did not "really seem to understand everything that's going on." *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. When a child is unable to express his desires, a fact finder may consider that he has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

The evidence shows the children are bonded to the families where they have been placed — John with his maternal grandparents and the two younger boys with their maternal aunt and uncle. *See J.D.*, 436 S.W.3d at 118. Ms. DeLong testified that not only are the children bonded with their placement families, but the families are bonded to them as well. The families are stable, have proven they can take care of the children's needs — emotional and physical, and are

committed to caring for their needs now and in the future. *See id.* Moreover, the families ensure that John, James, and Joseph spend time together by engaging in social activities together.

Although Father was initially granted weekly visitation, Ms. DeLong testified he "would no show to most of them[,]" and when he did show up, he was late. *See id.* According to Ms. DeLong, the children were initially happy to see Father during visits, but by the middle or end of the visit "their excitement kind of wore off and they were ready for the visit to end." Subsequently, due to a physical threat by Father to Mother, Father's visitation was reduced to once a month. According to Ms. DeLong, by the time of trial, Father had not seen the children for three or four months. *See id.*

2. *Emotional & Physical Needs/Emotional & Physical Danger/Parenting Abilities*

As to the children's needs, Ms. DeLong testified John has been diagnosed with ADHD for which he takes medication. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. James, who was six at the time of trial, was held back from starting school because it was determined he was not yet ready for kindergarten, which could have been a result of his premature birth. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong stated Joseph, the youngest child, had no special emotional or physical needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. However, as to all three children, Ms. DeLong testified their health and behaviors have improved since they were placed outside the home. She stated that during her initial visits, the children "couldn't sit still," "you couldn't have a conversation with them[,]" and "[t]hey would be bouncing off — wall to wall." It was a struggle to get them to shower, engage in a routine, or go to bed. However, after spending time in their placement homes, the children "were able to calm down" and engage in a routine. Ms. DeLong concluded Father is unable to meet the physical and emotional needs of the children. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

With regard to the emotional and physical danger to the children — now and in the future, there is evidence Father suffers untreated mental instability, engages in drug use, and has committed domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family or other who have access to child's home); *id.* § 263.307(b)(8) (history of substance abuse by child's family or others who have access to child's home); *id.* § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. According to Ms. DeLong, Mother said her relationship with Father was abusive. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72; *see also In re G.M.G.*, 444 S.W.3d 46, 59 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that evidence of father's domestic violence supports finding of endangerment to physical or emotional well-being of child). A parent's tendency towards violence is relevant to a best interest determination. *See D.N. v. Texas Dep't of Family & Protective Servs.*, No. 03–15–00658–CV, 2016 WL 1407808, at *2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.) ("[D]omestic violence may constitute endangerment, even if the violence is not directed at the child."); *In re A.A.*, No. 06–14–00060–CV, 2014 WL 5421027, at *3 (Tex. App.—Texarkana Oct. 23, 2014, no pet.) (mem. op.) ("Domestic violence, want of self-control, and the propensity for violence may be considered as evidence of endangerment."). The evidence shows Father threatened Mother with violence during a visitation. At a particular visitation, Father became "upset" with Mother. He told Mother "he wanted to put a bullet in her head." *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72; *see also G.M.G.*, 444 S.W.3d at 59. When Ms. DeLong confronted Father about the incident, he admitted making the threat. According to Ms. DeLong, Father stated "he loses his temper and he loses his cool and he says things that he sometimes regrets." As a result of this incident, Mother and Father were no longer permitted joint visitation, and Father's visitation was reduced from weekly to monthly.

Father admitted to Ms. DeLong that he was using methamphetamines. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong stated that based on this admission, his drug use was the Department's biggest concern. Yet, Father failed to address his drug use in accordance with the service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *see also id.* § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate appropriate agency's close supervision); *id.* § 263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes with reasonable time period); *Holley*, 544 S.W.2d at 371–72.

Father also admitted to suffering from PTSD, depression, and possibly bipolar disorder. *See* TEX. FAM. CODE ANN. § 263.307(b)(6) (results of psychiatric, psychological, or developmental evaluations of child's parents); *Holley*, 544 S.W.2d at 371–72. "A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth, 2004, pet. denied). Nevertheless, much like his drug issues, Father failed to address his mental health issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong testified she requested on multiple occasions that he go to the Center for Healthcare Services to deal with his mental health issues. In response, Father told her he was seeking treatment through the VA. Ms. DeLong asked Father to provide proof of VA treatment, but he never did. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

The record also shows Father was unable to meet his children's needs because he was unable to provide stable housing or proof of stable employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. "Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs."

*In Interest of A.J.-A.*, No. 14-16-00070-CV, 2016 WL 1660858, at \*5 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet.) (mem. op.); *see G.M.G.*, 444 S.W.3d at 59–60 (same); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that parent's failure to provide stable home and provide for child's needs contributes to finding that termination of parental rights is in the child's best interest). Ms. DeLong testified that Father claimed to be living with an aunt and uncle. However, when she requested that he confirm he was still residing with them, he failed to respond. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72; *see also A.J.-A.*, 2016 WL 1660858, at \*5. Father's employment history lacked stability. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong stated he never provided proof of employment, but he would call and say he was working at a fast food restaurant, then a mechanic's shop, or somewhere else. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong testified, "it was always something different."

The foregoing evidence is also relevant to Father's parenting abilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. As set out above, Father has a history of: (1) domestic violence — going so far as to threaten Mother following a visitation, (2) drug use, and (3) mental health issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Father also failed to provide proof of stable housing or employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The evidence shows Father failed to comply with his service plan, which required, among other things, that he complete services relating to domestic violence, parenting, psychological and psychiatric assessments, and provide proof of stable housing and employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10);

*id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. On this basis, the trial court could have determined Father lacks the abilities needed to parent his young children. *See Holley*, 544 S.W.2d at 371–72.

### 3. *Available Programs to Assist Individual to Promote Best Interest*

As noted above, the Department created a service plan for Father, requiring him to complete services relating to drug use, domestic violence, parenting, psychological and psychiatric issues, and to secure and maintain stable housing and employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong testified the most important aspect of the service plan concerned services relating to Father's drug use. According to Ms. DeLong, Father failed to complete any of the services set out in the plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong testified she was the only caseworker involved throughout the entirety of the case and her contact information never changed. Yet, Father failed to maintain contact with her. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. She stated she "reached out to him," leaving messages and asking him to provide proof of the services he completed. However, Father made only occasional calls relating to his ever-changing employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

When asked — given his mental health issues — whether extra time to implement changes to his behavior might help Father gain the return of his children, Ms. DeLong stated, "[n]o," explaining that Father had already been given twelve months to make changes and despite her requests, he failed to make any changes. Thus, the evidence shows that despite the availability of services and programs provided by the Department, Father chose not to engage. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

4. *Plans for Children by Those Seeking Custody/Stability of Home or Proposed Placement*

The record is devoid of any evidence regarding Father's plans for the care of his children should he retain custody. *See Holley*, 544 S.W.2d at 371–72. At the time of the hearing, Father's housing and employment status were unknown. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong also testified Father failed to provide any support for his children during the pendency of the case.

As mentioned above, the evidence shows the children's needs are currently being met by their placement families — maternal grandparents and a maternal aunt and uncle. *See Holley*, 544 S.W.2d at 371–72. The children have been with the placement families for more than a year. Moreover, the two youngest children previously lived for a time with their aunt and uncle before this latest placement. The siblings see each other on a regular basis. The families have engaged in activities so that the brothers see each other three or four times a month.

According to Ms. DeLong, the children are bonded with their placement families and the family members are bonded to them. She testified the current placements are "stable," the placement families have proven they can take care of the children's emotional and physical needs, and importantly, both families are ready and willing to adopt the children. *See id.* The Department's long-term plan for the children is to go forward with adoption by the placement families, with the maternal grandparents adopting John, and the maternal aunt and uncle adopting both James and Joseph. *See id.*

The boys' maternal aunt, C.B., testified the two younger boys have been with her family for more than a year. *See id.* She stated that in the beginning, they had some "tumultuous times," emotionally and behaviorally, especially after visitations, but now things have settled down. *See id.* She said James and Joseph are progressing in school, and as a family, they engage in numerous activities, including trips to the waterpark, state parks, and the library. The family also participates

in church activities. On Sundays after church, the families eat lunch together to allow the brothers to see each other. In addition, she confirmed that the families engage in activities so that the brothers see each other at least three or four times a month.

C.B. stated each child has his own bedroom, and they are bonded with her family, including her biological children. C.B. testified she treats James and Joseph as if they are her own. She and her husband plan to adopt the two younger boys in the event Father's rights are terminated. *See id.*

5. *Acts or Omissions Suggesting Parent-Child Relationship is Not Proper/Excuses*

With regard to the final *Holley* factors, the trial court heard evidence of the following acts and omissions by Father, establishing the existing parent-child relationship is improper: (1) Father's inability to provide stable housing or maintain consistent employment; (2) Father's history of domestic violence, including threatening to kill Mother after a visitation; (3) Father's untreated drug use; and (4) Father's unaddressed mental health issues. As to evidence of any excuse for his conduct and failure to take steps to address his issues, the only evidence presented was Father's mental health issues, which he refused to address pursuant to the service plan.

### Summation

After reviewing the evidence and considering the *Holley* factors and the statutory factors in section 263.307(b) of the Code, we conclude the evidence was such that the trial court could have reasonably determined termination of Father's parental rights was in the best interests of the children. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. The evidence shows Father has issues relating to domestic violence, drug use, and mental health, which he refused to address. Father's refusal to address these issues — as well as his failure to secure and maintain housing and employment — subjects his children to a life of emotional and physical instability. The evidence also shows that in the year leading up to the final hearing, Father failed to complete any of the

requirements of his service plan. Moreover, Father has not challenged the trial court's findings that he constructively abandoned his children and failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain their return. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). The grounds for termination are probative on the issue of best interest. *See C.H.*, 89 S.W.3d at 28; *B.R.*, 456 S.W.3d at 615; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Accordingly, after considering all the evidence in the light most favorable to the best interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Given that the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of Father's parental rights would be in the best interests of the children. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108; *E.D.*, 419 S.W.3d at 620.

## CONCLUSION

Based on the foregoing, we hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find that termination of Father's parental rights was in the best interests of John, James, and Joseph. Accordingly, we overrule Father's sufficiency complaint and affirm the trial court's order of termination.

Marialyn Barnard, Justice