**Affirmed and Memorandum Opinion filed January 5, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00664-CV

## IN THE INTEREST OF D.M.M., CHILD

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2015-06964J

## M E M O R A N D U M   O P I N I O N

Appellants M.V.V. ("Mother") and H.R.M. ("Father") appeal the trial court's final decree terminating their parental rights and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of D.M.M. ("the Child"). In two issues both parents challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the Child. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Pretrial Proceedings

On the day of the Child's birth, November 26, 2015, the Department received a referral regarding risk of neglectful supervision by Mother and Father. Both parents had a history of illegal drug use and three children in foster care. Mother allegedly used Father's morphine prescription while pregnant. Father was believed to be a gang member, and was on probation for aggravated assault with a deadly weapon. Mother tested positive for opiates in the three months prior to the Child's birth, including a positive test three days before birth.

The Department sought to be named temporary managing conservator because (1) Mother tested positive for high levels of controlled substances; and (2) both parents have a history of drug use. In addition, both parents had three children in the Department's custody at the time of the Child's birth. Neither parent complied with required drug testing during the pendency of the previous three children's termination proceedings.

Four days after the Child's birth, a Department investigator made face-to-face contact with Mother. Mother denied using morphine during pregnancy, admitted using synthetic marijuana, but denied currently using any drugs. Mother tested positive for morphine three times between September and November, and positive for "K2/Spice" once in March. Mother had a prior misdemeanor conviction for theft of property.

Another investigator made face-to-face contact with Father on the same day. Father denied being in a gang, and said Mother did not use his prescription morphine. Father could not submit to some of the court-ordered drug tests because he had a crisis with his medical condition involving sickle cell anemia. Father

2

admitted that he currently is serving ten years' probation for assault with a deadly weapon. Father submitted to drug tests in March, July, and October. Most revealed positive results for prescribed medications. The Department described these results as negative because Father had a prescription. In July, Father had a positive hair follicle test for cocaine. Father had prior convictions for assault-bodily injury, possession of marijuana, indecent exposure, and theft of property.

The removal affidavit lists the parents' history with the Department. Three other children were removed from the parents' care due to serious neglectful supervision. The referrals for those children stated that the youngest children, ages two and three, lost five to ten pounds in one month but did not appear to be malnourished. After the third child was born, the Department noted that both parents were using drugs in the presence of the children. Mother had passed out for an undetermined amount of time due to being under the influence of drugs. In April 2015, the Department was granted temporary managing conservatorship of the three other children.

The Child was placed with the paternal aunt and uncle in January 2016, which is where her siblings were placed. Family service plans were created and approved by the trial court. The trial court found that both parents reviewed the service plans, understood them, and were advised that unless they were willing and able to provide the child with a safe environment within the reasonable period of time specified in the service plan, their parental and custodial rights were subject to restriction or termination.

The Department filed an amended petition for termination of the parents' rights in which it alleged Mother's rights should be terminated under Texas Family Code section 161.001(b)(1)(D), (E) (endangerment); (M) (relationship terminated with respect to another child based on finding of endangerment); (N) (constructive

3

abandonment); (O) (failure to comply with service plan); and (P) (use of controlled substance in a manner that endangered health or safety of the child). The amended petition alleged Father's rights should be terminated under section 161.001(b)(1)(D), (E), (M), (N), and (P).

**B. Trial Testimony**

Father moved for a continuance before the introduction of evidence on grounds that ill health prevented him from performing services under his plan. The trial court reviewed Father's health records, which reflected that Father could "exercise and do whatever he wants as long as he takes his medication." The trial court denied the motion for continuance. The trial court admitted into evidence without objection the citations for both parents, a DNA report showing paternity, and the prior decree of termination on endangerment grounds.

Jessica Leal, the Department caseworker, testified that the Child came into the Department's custody because the parents have a history of illegal drug use and three prior "CPS cases." The parents' rights were terminated to three older children on grounds of endangerment and failure to comply with the family service plan. Both parents continued to test positive for illegal drugs during the pendency of the prior termination suit. The parents did not complete any services while the current termination case was pending.

At the time of trial the Child was placed with her paternal aunt and uncle where she lived with her three older siblings. According to Leal, the aunt and uncle meet all of the Child's physical and emotional needs, and want to adopt the Child and her three siblings. The Child has bonded with the aunt and uncle. The parents have not demonstrated that they can provide a safe and stable environment for the Child.

Leal testified that Father told her he wanted to work the service plan. Leal provided Father with referrals to help with the tasks on the plan. Leal reviewed each service with Father and explained where to go to complete the services. However, Father did not perform the services under the plan.

Peggy Simon, a Child Advocates volunteer, testified that she wished the parents had three more months to try to work their services. She further testified that termination and continued placement with the aunt and uncle were in the best interest of the Child. Simon agreed that the Child bonded with the aunt and uncle and was doing well in her current placement.

Father testified that he has been diagnosed with sickle cell anemia, which caused him to be hospitalized seven times in the past year. Father admitted the hospitalizations had not prevented him from working his services. Father asked the trial court for more time to work his services, and to stay off drugs. Father receives monthly income of $625 from Social Security, which he admitted is not enough to support the Child, but testified he would find employment if his parental rights were not terminated.

Mother also asked for more time to complete her services. Mother testified that if given more time she would work her services and stay off drugs. She acknowledged that her rights to the three older children were terminated, but said she wanted to raise her daughter. Mother testified that a leukemia diagnosis six months before trial prevented her from working her family service plan. Mother testified that she "stepped away from CPS for a little bit" due to her illness. On cross-examination, Mother admitted to testing positive for opiates three times while the termination was pending. No further evidence was developed about Mother's illness and its effect on this termination case.

At the conclusion of the bench trial, the trial court found clear and

5

convincing evidence that the parents' parental rights should be terminated under Family Code section 161.001(b)(1)(M).

## II. ANALYSIS

In a single issue, each parent challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the Child.

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the finding to

determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 336. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### A. Predicate Termination Grounds

Termination under section 161.001(b)(1)(M) requires a finding that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code Ann. § 161.001(b)(1)(M).

On April 28, 2016, the parents' parental rights were terminated with respect to three older children based on section 161.001(b)(1)(E) of the Texas Family Code. A copy of the 2016 termination decree was admitted into evidence and is included in the appellate record. The parents concede the subsection M finding is supported on appeal. Accordingly, the first requirement for termination—a predicate statutory ground—is satisfied. *See* Tex. Fam. Code Ann. § 161.001(b)(1).

**B.      Best Interest of the Child**

Both parents challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the Child's best interest.

The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

A strong presumption exists that the best interest of the child is served by keeping the child with his natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d at 230. Prompt and permanent placement of the child in a safe environment also is presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). Mother contends that the presumption in her favor is not rebutted because she cared for the Child, and the Child Advocates' volunteer wanted the parents to have more time before their rights were terminated. Father contends that the presumption in his favor is not rebutted because there was no evidence that he was a danger to the Child.

### 1. Present and Future Physical and Emotional Danger to the Child

Evidence supporting termination under the grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest).

A reviewing court may examine a parent's history with other children in considering the risks or threats of a parent's environment. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). "Part of [the] calculus includes the harm suffered or the danger faced by other children under the parent's care." *Id*. Courts consider whether a parent demonstrates adequate parenting skills, including providing the child with "protection from repeated exposure to violence even though the violence may not be directed at the child." Tex. Fam. Code Ann. § 263.307(b)(12)(E). The unchallenged predicate finding that rights to three other children were terminated on endangerment grounds is binding. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

At seven months old, the Child was very young and dependent on her caregivers to meet her needs. Father asserts that he did not pose a danger to the Child; however, the record reflects that Mother and Father lacked the ability to meet the Child's needs, and that they represented a danger to the Child if the Child were returned to their care. Both parents had a history of using illegal drugs, and their three older children were removed from their care based on a finding that the parents engaged in conduct endangering to the children. *See generally In re J.W.O.*, 02-10-00065-CV, 2010 WL 4924975, at *2 (Tex. App.—Fort Worth Dec. 2, 2010, no pet.) (mem. op.) (finding evidence of a prior termination in support of

subsection M relevant to the fact-finder's best interest determination.).

The Texas Supreme Court has recognized that parents' use of narcotics and its effect on their ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345; *see also Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ) (stating a parent's drug use is a condition that can endanger a child's physical or emotional well-being and indicate instability in home environment). A parent's drug use also supports a finding that termination of parental rights is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re M.S.L.*, No. 14–14–00382–CV, 2014 WL 5148157, at *6 (Tex. App.—Houston [14th Dist.] Oct. 14, 2014, no. pet.) (mem. op.). The fact finder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In Interest of M.L.G.J.*, 14-14-00800-CV, 2015 WL 1402652, at *4 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.) (considering a parent's drug history in affirming a trial court's decision that termination was in the best interest of the child).

In addition to Mother's admitted use of opiates and Father's admitted use of cocaine, Leal testified that both parents failed to submit to required drug testing. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The parents' behavior evinces a course of conduct that a fact finder reasonably could conclude endangers the Child's well-being.

### 2.    Stability and Compliance with Services

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d at 249. The record reflects that both parents were provided with family service plans in this case and in the previous termination case with their three older children. Department caseworkers explained the plans to the parents and explained that their participation in services was necessary for reunification with their children.

Both parents acknowledged that Leal provided family service plans. Mother testified that Leal reviewed the plan with her and that one of the requirements of her plan was to abstain from using illegal drugs. The record reflects, however, that Mother did not complete the services in her plan and did not remain drug-free knowing it was necessary to obtain the return of her children. Father testified that Leal reviewed his service plan with him and made referrals necessary for Father to participate in those services, including parenting classes and a psychosocial evaluation, but Father failed to work his services. The parents' failure to comply with court-ordered tasks and drug use during the termination proceedings supports the trial court's finding that termination is in the best interest of the Child.

### 3.    Child's Desires and Proposed Placement

The Child was very young at the time of trial and there is no evidence of her desires. When a child is too young to express her desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

11

Because the Child was removed at birth, Mother spent minimal time with her. The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the Child's best interest. *See id.* at 119–20. A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best-interest determination. *Id.* ("Stability and permanence are paramount in the upbringing of children."). Therefore, evidence about the present and future placement of the Child is relevant to the fact finder's best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

Leal testified that the parents have not demonstrated the ability to provide a safe and stable environment for the Child. She further testified that the Child is currently living with her paternal aunt and uncle and her three older siblings. The aunt and uncle want to adopt all four children. Leal concluded that the Child has bonded with the aunt and uncle, and it is in her best interest to remain with her current caregivers and her siblings.

### 4.    Parenting Abilities and Family Support

The evidence showed that neither parent demonstrated the ability to safely parent the Child. The Child's three older siblings were removed from the home on endangerment grounds. Other than Father's sister and husband, the children's caregivers, there is no evidence of family support to help with parenting. Moreover, both parents continued to test positive for illegal drugs despite service plans requiring them to remain drug free in order for their Child to be returned to them.

### 5.    Excuses for Acts or Omissions of Parents

Lastly, Mother argues her illness hindered her ability to work her services.

Mother testified that she had been diagnosed with leukemia six months before trial. After the diagnosis, she "stepped away from CPS for a little bit." Mother did not present evidence that her use of opiates was connected with her diagnosis, nor did she explain how the diagnosis prevented her from contacting the Department. The trial court as fact finder was in the best position to assess the credibility of Mother's excuses. *See generally In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## CONCLUSION

The record contains evidence supporting the best interest finding based on the parents' drug use, failure to comply with court-ordered services, and previous termination on endangerment grounds. Based on the evidence presented, the trial court could have reasonably formed a firm belief or conviction that terminating both parents' parental rights was in the Child's best interest so that she could promptly achieve permanency through adoption. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Applying the applicable *Holley* factors to the evidence, we conclude that there was legally and factually sufficient evidence to reasonably establish a firm belief or conviction that termination of both parents' parental rights is in the Child's best interest. *See* Tex. Fam. Code Ann. § 106.001(2). We overrule Mother's and Father's sole issues on appeal.

We affirm the decree terminating appellants' rights.

/s/    William J. Boyce
Justice

Panel consists of Justices Boyce, Busby, and Wise.

13