

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00386-CV

**IN THE INTEREST OF J.A.T.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01687
Honorable Richard Garcia, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
    Patricia O. Alvarez, Justice
    Irene Rios, Justice

Delivered and Filed:  November 1, 2017

AFFIRMED

This is an accelerated appeal from the trial court's order terminating appellant mother's ("Mother") parental rights to her child, J.A.T.  In her sole issue on appeal, Mother challenges the sufficiency of the evidence in support of the trial court's finding that termination was in J.A.T.'s best interest.  We affirm the trial court's order of termination.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") removed nine-year-old J.A.T. from Mother's custody after concerns regarding Mother's multiple suicide attempts and repeated arrests regarding assaultive conduct.  The Department placed J.A.T. with his maternal grandmother and subsequently filed a petition, seeking to become the temporary

managing conservator of J.A.T. and to terminate Mother's and J.A.T.'s father's parental rights.[1] During the case, the Department created a service plan for Mother, which required, among other things, that she seek domestic violence therapy, obtain a psychiatric assessment, attend parenting classes, and maintain stable employment and housing. The trial court ordered Mother to comply with each requirement set out in the plan. The record reflects Mother completed only the psychiatric assessment requirement of her service plan. The court held the statutorily required status and permanency hearings, and ultimately, because Mother failed to complete her service plan, the matter moved to a final hearing, during which the Department sought to terminate Mother's parental rights.

At the hearing, the trial court heard testimony from the following three individuals: (1) Jennifer DeLong, the Department caseworker involved in the case; (2) Mother; and (3) Cecilia Hellrung, the guardian ad litem appointed to represent Mother's best interest during the course of the case. After hearing the testimony and taking the case under advisement, the trial court ordered Mother's parental rights be terminated. Specifically, the trial court found Mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of J.A.T. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2015). The trial court further found termination of Mother's parental rights would be in J.A.T.'s best interest. *See id*. § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Mother's parental rights. Thereafter, Mother perfected this appeal.

---

[1] Approximately a week after the Department filed its petition, J.A.T.'s father executed an affidavit voluntarily relinquishing his parental rights. At the final termination hearing, the trial court terminated his parental rights, and he did not file a notice of appeal. Accordingly, he is not party to this appeal.

ANALYSIS

On appeal, Mother does not challenge the evidence with regard to the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(O). Rather, Mother challenges the legal and factual sufficiency of the evidence in support of the trial court's finding that termination was in the best interest of her child. *See id.* § 161.001(b)(2).

### *Standard of Review*

A parent's right to her child may be terminated by a court only if the court finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of her child. TEX. FAM. CODE ANN. § 161.001(b). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to her child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015). When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency).

### *Best Interests — Substantive Law*

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code. *Id.*

In addition to these statutory factors, we apply the non-exhaustive *Holley* factors to our analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Finally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

### *The Evidence*

Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in her child's best interest. Although Mother does not identify any specific *Holley* factor that lacks sufficient evidence, Mother contends a review of the evidence in light of the *Holley* factors reveals the insufficiency of the trial court's best interest finding.

Here, the record reflects the Department produced the following evidence as to each of the *Holley* factors, supporting the trial court's finding that termination was in J.A.T.'s best interest.

1.  *Desires of the Children*

At the time of trial, J.A.T. was nine-years-old. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. Although J.A.T. did not testify at trial, Ms. DeLong testified J.A.T. desired to stay with his grandmother, with whom he had been living "on and off" throughout his life and since removal. She also testified he wanted Mother to be able to move into his grandmother's house and live with them. She added, however, that it was highly unlikely Mother and J.A.T.'s grandmother would live together because they did not get along and Mother had been arrested for threatening to kill her.

In addition to this testimony, the trial court was also entitled to consider testimony regarding J.A.T.'s current placement, which indicated J.A.T. was well-cared for by his grandmother. *See In re J.D.*, 436 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Ms. DeLong testified J.A.T.'s grandmother provided him with a very stable environment, and as a result, he was doing well in school. The trial court was also entitled to consider testimony concerning J.A.T.'s time spent with Mother. *See J.D.*, 436 S.W.3d at 108; *U.P.*, 105 S.W.3d at 230. Here, the record reflects that J.A.T. spoke to Mother on the phone twice a week; the record also reflects, however, that after these phone calls, J.A.T. would act out.

2.  *Emotional & Physical Needs/Emotional & Physical Danger*

The record shows Mother was unable to meet J.A.T.'s emotional and physical needs because she was unable to provide him with stable housing. *See* TEX. FAM. CODE ANN. § 263.307(b)(2) (frequency and nature of out of home placements); *Holley*, 544 S.W.2d at 371–72. "Lack of stability, including a stable home, supports a finding that the parent is unable to

provide for a child's emotional and physical needs." *In Interest of A.J.-A.*, No. 14-16-00070-CV, 2016 WL 1660858, at *5 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet.) (mem. op.); *see In re G.M.G.*, 444 S.W.3d 46, 59–60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (same); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that parent's failure to provide stable home and provide for child's needs contributes to finding that termination of parental rights is in child's best interest). The record reflects that J.A.T. lived with his maternal grandmother "on and off" because Mother was unable to maintain stable housing. Mother testified J.A.T. has "[l]ived with my mother for several years." At the time of trial, Mother had been staying at an emergency shelter for the past three months, and she had plans to look for an apartment. Mother testified she had an appointment the following day with Rapid Rehousing to help her find an apartment, and she believed she had a "good chance" of obtaining stable housing. Mother further testified she has always provided a home for J.A.T. — "whether it was with my mother or my own."

The evidence also shows Mother exposed J.A.T. to episodes of domestic violence, endangering his physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family); *Holley*, 544 S.W.2d at 371–72. A parent's tendency towards violence is relevant to the trial court's best interest determination. *See D.N. v. Tex. Dep't of Family & Protective Servs.*, No. 03–15–00658–CV, 2016 WL 1407808, at *2 (Tex. App.–Austin Apr. 8, 2016, no pet.) (mem. op.) ("[D]omestic violence may constitute endangerment, even if the violence is not directed at the child."); *In re A.A.*, No. 06–14–00060–CV, 2014 WL 5421027, at *3 (Tex. App.–Texarkana Oct. 23, 2014, no pet.) (mem. op.) ("Domestic violence, want of self-control, and the propensity for violence may be considered as evidence of endangerment."). Ms. DeLong testified she was concerned about Mother's domestic violence issues. According to Ms. DeLong, Mother had been arrested in the past for assaulting

her ex-girlfriend, and as of the time of trial, Mother had six cases concerning assaultive conduct each of which have resulted in deferred adjudications. The record reflects Mother was arrested for criminal mischief because she slashed her ex-girlfriend's tires and broke the windows of her ex-girlfriend's vehicle. Mother was also arrested for making a terroristic threat outside of J.A.T.'s grandmother's home. According to Ms. DeLong, Mother stood outside the grandmother's home with police officers — who had already been called to the grandmother's residence — and told police officers she wanted to kill her mother. Ms. DeLong testified she believed Mother did not understand the gravity of her actions, and "just kind of passed it off" when asked about it.

At trial, when asked about her arrest history, Mother admitted she had been arrested for stalking, criminal mischief, and possession of marijuana. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *Holley*, 544 S.W.2d at 371–72. Mother testified these charges, however, did not involve incidents of domestic violence. Mother further testified she was awaiting a hearing for an assault and bodily injury charge due to a road rage incident. According to Mother, a woman "cut me off" multiple times, and when the vehicles stopped, she approached the woman. Mother testified the woman pushed her, and as a result, she slapped the woman. Mother admitted she had anger management issues. Again, a parent's inability to maintain a lifestyle free from arrests and incarcerations are relevant to the best-interest determination. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Such conduct subjects a child to a life of uncertainty and instability, ultimately endangering the child's physical and emotional well-being. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child").

In addition to Mother's arrest history, the record reflects Mother struggled with mental health issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(6) (results of psychiatric evaluations of child's parents); *Holley*, 544 S.W.2d at 371–72. "A parent's mental state may be considered in

determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child." *R.W.*, 129 S.W.3d at 739. Here, the record reflects the Department became involved in this case due to concerns of suicide. The Department produced evidence that Mother attempted suicide on multiple occasions. *See id.* ("Threats or attempts to commit suicide may also contribute to a finding that the parent engaged in a course of conduct that is detrimental to a child's physical or emotional well-being."). Mother testified she "get[s] very depressed," and has tried to kill herself. With regard to one of these past incidents, Mother testified she attempted to hang herself in the bathroom, but stopped because she kept seeing her children's faces.[2] Because of the incident, Mother spent two weeks at an inpatient psychiatric hospital. Mother also testified that with regard to her most recent hospitalization, she did not intend to kill herself. Rather, she said she was going to kill herself, but "I never made any attempt. I did not overdose, I didn't do anything." Mother explained she had been taken to the hospital because her ex-girlfriend wanted "to make sure…there was nothing in my system."

### 3. *Parenting Abilities*

With regard to Mother's parenting abilities, the evidence set out above is relevant. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. The evidence shows Mother failed to provide J.A.T. with a stable home environment and relies on J.A.T.'s grandmother to provide stability for J.A.T. The evidence also shows Mother has a history of engaging in violent conduct and attempting suicide. With regard to her life choices, the record reflects Mother knowingly becomes involved in relationships that are toxic or not appropriate. Mother testified that during the course of this

---

[2] Mother has one other child; however, that child is not the subject of this appeal.

proceeding, she entered into a relationship with a friend should not have dated because the relationship led to violent behavior. Mother testified she slashed the tires of her ex-girlfriend's vehicle and broke the vehicle's windows. With regard to her mental health issues, Mother testified that she did not routinely take her medications because they made her "feel like I'm a zombie."

When asked about her parenting abilities, Mother testified she has been a good parent. Mother testified that although she has some issues, she has never hurt J.A.T. physically. Mother admitted, however, that she "may have damaged him mentally with my actions." Mother further testified that although she has been in a downward spiral this past year, she has been trying to be a better parent. In addition to Mother's testimony regarding her parenting abilities, the trial court heard testimony from Mother's appointed guardian ad litem, Cecilia Hellrung. Ms. Hellrung testified she thought Mother could have a good relationship with J.A.T. so long as she was monitored by the Bexar County Mental Health Court ("Mental Health Court"), took her medications, and attended counseling.

4. *Available Programs to Assist Individual to Promote Best Interest*

The Department created a service plan for Mother, requiring her to seek domestic violence therapy, obtain a psychiatric assessment, attend parenting classes, and maintain stable employment and housing. Ms. DeLong testified the most important aspect of the service plan concerned the psychiatric assessment to determine Mother's mental health issues and then domestic violence. According to Ms. DeLong, Mother completed only one of these requirements — the psychiatric assessment. *See* TEX. FAM. CODE ANN. §§ 263.307(b)(10) (willingness and ability of child's family to seek out and accept and complete counseling services); *Holley*, 544 S.W.2d at 371–72. Ms. DeLong testified that she spoke to Mother about the importance of completing her service plan, and Mother stated she could not complete her services because of her job and lack of transportation. The record reflects, however, Mother did not maintain consistent employment.

During the course of the case, Mother worked as a customer service representative for approximately seven months until she was fired for missing work. Mother testified she missed work due to classes, court, and therapy. At the time of trial, Mother was unemployed. Mother testified she had not been working for the past two to three months, but she was going to start a job within the week. With regard to Mother's transportation excuses, Ms. DeLong testified she offered Mother bus tickets, but Mother declined to accept them, stating she obtained a car with her girlfriend at the time.

When asked about her service plan, Mother testified she needed more time to comply with her service plan. *See* TEX. FAM. CODE ANN. §§ 263.307263.307(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable amount of time). The record shows the Department has been involved with Mother for approximately one year, and she has had ten months to comply with her service plan. Mother stated that if she was granted more time, she would take her domestic violence and parenting classes as well as go to therapy. Mother stated she would stay out of toxic relationships and take her medications regularly. Mother added she is currently waiting to be accepted by the program offered by the Mental Health Court, and she believes the program will be beneficial.

The trial court also heard testimony from Ms. Hellrung with regard to Mother's need for more time to complete her service plan. Ms. Hellrung testified that although Mother is waiting to be accepted by the Mental Health Court program, Mother is seeing someone at the program and being monitored. Ms. Hellrung opined that she believed Mother could implement positive changes in her life with the help of the program. Ms. Hellrung further opined Mother has not had the opportunity to get the help she has needed because she has not been able to participate in the program yet. Ms. Hellrung stated Mother has not had the opportunity to address her mental health issues, and the court program will provide services to her that she could not otherwise afford.

5. *Plans for Children by Those Seeking Custody/Stability of Home or Proposed Placement*

The record shows Mother has no definite plan for caring for J.A.T. *See Holley*, 544 S.W.2d at 371–72. At the time of the hearing, Mother was living in an emergency shelter and unemployed. Mother testified she hoped to obtain housing within the next week and also planned to start a new job at Wendy's next week.

The evidence further shows J.A.T.'s needs are being met by his maternal grandmother, who plans to adopt him. The record reflects J.A.T. has lived with his maternal grandmother for a substantial amount of time over the past nine years of his life. Ms. DeLong testified that prior to being placed into grandmother's home, J.A.T. lived with his grandmother several times for different durations of time. Ms. DeLong testified J.A.T. "seemed to be bonded to his grandmother," and she believed it was in J.A.T.'s best interest to remain living with grandmother. The record reflects that J.A.T.'s grandmother also cares for his half-sibling.

6. *Act or Omissions Suggesting Parent-Child Relationship is Not Proper/Excuses*

With regard to the final *Holley* factors, the trial court heard evidence of the following acts and omissions by Mother, establishing that the existing parent-child relationship was improper: (1) Mother's inability to provide stable housing for J.A.T. or maintain consistent employment; (2) Mother's past history of assault, including multiple arrests related to Mother's anger issues; (3) and Mother's history of suicide attempts. As to evidence of Mother's excuses for her past conduct, Mother testified she needed more time to seek the help she needs with regard to her anger and depression issues. Mother admitted it was not right for J.A.T. to "wait for his mom to get her act together, in order for him to have a parent," but she has to wait and find out whether she is accepted into the program offered by the Mental Health Court.

### *Summation*

After reviewing the evidence above and considering the *Holley* factors and the statutory factors in section 263.307(b) of the Code, we conclude the evidence was such that the trial court could have reasonably determined termination of Mother's parental rights was in J.A.T.'s best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Here, the evidence shows that Mother has subjected J.A.T. to a life of emotional and physical instability. The trial court heard evidence regarding Mother's anger management issues and how Mother knowingly becomes involved in toxic relationships — all of which have resulted in several arrests. The trial court also heard evidence regarding Mother's mental instability, including her multiple suicide attempts. Although there is some evidence that Mother may benefit from services provided by the Mental Health Court, the record reflects Mother has had at least ten months to comply with the Department's service plan. The evidence shows, however, that Mother has only completed one requirement of the plan. Furthermore, Mother has not challenged the trial court's findings that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of J.A.T. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P). Thus, evidence supporting this termination ground is probative on the issue of best interest. *See C.H.*, 89 S.W.3d at 28; *B.R.*, 456 S.W.3d at 615; *see also* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Accordingly, after considering all the evidence in the light most favorable to the best interest finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in J.A.T.'s best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Given that the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of

Mother's parental rights would be in J.A.T.'s best interest. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108; *E.D.*, 419 S.W.3d at 620.

## CONCLUSION

Based on the foregoing, we hold the evidence is legally and factually sufficient to have permitted the trial court, in its discretion, to find that termination of Mother's parental rights was in J.A.T.'s best interest. Accordingly, we overrule Mother's sufficiency complaint and affirm the trial court's order.

Marialyn Barnard, Justice