

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00610-CV

**IN THE INTEREST OF S.M.R.**, S.L.R. and S.I.R.

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00851
Honorable Richard Price, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
   Rebeca C. Martinez, Justice
   Irene Rios, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED

This appeal arises from an order terminating the parental rights of Andrea G. and Mark R. to their daughters: seven-year-old S.M.R., six-year-old S.L.R., and four-year-old S.I.R. On appeal, Andrea G. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of her children. Appellant Mark R. brings two issues on appeal. With respect to S.M.R., he argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the best interest of S.M.R. With respect to S.L.R. and S.I.R., Mark R. argues the trial court erred in terminating his parental rights pursuant to section 161.002(b)(1) of the Family Code because he "clearly and unequivocally claimed to be the children's father during his testimony at trial." We affirm.

## BACKGROUND

In December 2015, the Department of Family and Protective Services became concerned about the children in this case when it received information that Andrea G. and Mark R. were involved in domestic violence and illegal drug use and that their children were living in unsanitary and unsafe conditions. After a period of family-based services, in April 2016, the Department filed a petition seeking removal of the children from the parents' care, conservatorship of the children, and termination of the parents' rights. In September 2017, the case proceeded to a bench trial. At the bench trial, four witnesses testified: caseworker Jeanna Obermayr, caseworker Lilly Alcorta, Andrea G., and Mark R.

Jeanna Obermayr, a family-based caseworker with the Department, testified she was assigned to this case for about three months. When the underlying termination proceeding was filed, another caseworker was assigned to the case. Obermayr testified her job is to "provide services and work with the family toward reunification." She received a referral based on "allegations of domestic violence, drug use, and neglect of the children." According to Obermayr, in December 2016, "there were allegations that came into the Department that there was domestic violence happening between [Andrea G.] and [Mark R.], that there was drug paraphernalia [and] broken glass in the home, that the home was deplorable [and] unsanitary, that the children were in soiled diapers, and that there was nothing for them to eat." The children were "placed in a safety plan with the maternal grandmother in her home."

According to Obermayr, she attempted to make contact with Mark R., but he had been arrested and jailed for endangerment of all three children and for failure to identify himself. Obermayr testified Mark R.'s arrest was related to why the referral had been made to the Department. Obermayr testified that the family violence concerns related to Mark R. abusing "the mother" and "the children also."

Obermayr was able to make contact in person with Andrea G. After Mark R.'s arrest and incarceration, Andrea G. had moved into her mother's home, the same home her children had been placed pursuant to the safety plan. Obermayr told Andrea G. that the reason for the Department's involvement was "domestic violence between her and [Mark R.], drug use by her and [Mark R.], and the neglect of their children." According to Obermayr, Andrea G. "admit[ted] that there was domestic violence occurring between her and [Mark R.] and that they did use illegal substances," including marijuana, opiates, and Xanax. Andrea G. said she smoked "marijuana at the home while the children were sleeping in the home." At this time, the children were five years old, four years old, and two years old. Obermayr testified Andrea G. was given a service plan and offered many services, including parenting, domestic violence, psychological and individual counseling, family counseling, drug assessment, and drug counseling. Obermayr testified Andrea G. began the drug treatment program and counseling, but did not complete these services. Andrea G. did not participate in any of the other services offered. According to Obermayr, she attempted to persuade Andrea G. to continue her services and engage in other services, but Andrea G. "just was not engaging."

Obermayr testified in April 2016, the children were removed from their safety placement at the maternal grandmother's home, and the underlying termination proceeding began. According to Obermayr, she conducted a visit at the maternal grandmother's home shortly before the removal of the children. Obermayr found the children "not being taken care of." "The children were infested with lice and scabies, and there were a lot of safety hazards within the household." "There were several sharp hazards." "Chemicals were not stored properly." "Medications were not stored properly." Further, the home was unsanitary. "There were hundreds of flies." "There was deteriorating food, rotten food in the home." Obermayr gave Andrea G. and the maternal grandmother forty-eight hours to clean the home and rectify the safety hazards. When the

conditions did not improve, the children were removed from the home and the petition for protection, conservatorship, and termination was filed.

Lilly Alcorta, the legal caseworker with the Department, testified she was assigned to this case after the chapter 262 hearing. Alcorta worked with Andrea G. on a family service plan. Andrea G. reviewed the service plan, appeared to understand it, had an opportunity to ask questions about it, and signed it. The service plan was then filed with and approved by the trial court. The service plan required Andrea G. (1) to complete a drug assessment and follow all recommendations; (2) to sign a form to release information; (3) to obtain and maintain a stable home, to show the ability to keep the home sanitary and free of hazards, and to make the home available to the caseworker for random and scheduled visits; (4) to maintain contact with the Department and notify it of any major life changes, such as employment, housing, or criminal record; (5) to complete a psychological evaluation and follow all recommendations; (6) to attend individual counseling and follow all recommendations; (7) to attend all appointments with the Department and children; (8) to refrain from criminal activity; (9) to submit to drug tests and remain drug free; and (10) to complete a domestic violence class.

Alcorta testified Andrea G. had just given her, on the day of the third setting for trial, certifications of completion relating to a parenting class and a domestic violence class. Alcorta stated that she and Andrea G. had "been going back and forth for the past two months about [Andrea G.] bringing [Alcorta] all of this information, and every day there's a reason why she can't show up." According to Alcorta, Andrea G. did attend individual therapy, but "was released on that as unsuccessful." Alcorta testified that Andrea G. had also not shown she was able to acquire and maintain suitable housing. Until four months before trial, Andrea G. had been living with her mother. She then moved into an apartment with Mark R., who had been released from jail. Alcorta testified she spoke with the office manager of the apartment complex who said Andrea

G. and Mark R. were living in the apartment. However, Alcorta was not able to verify the living arrangements, even though she had attempted five times:

> We knock on the door, and we can see people looking through the window, but they don't – they don't let us in. Actually, we went yesterday, and they did the same thing. They opened the window. You could see them look through the window, but they don't let us in.

Alcorta testified Andrea G. and Mark R. would not have this apartment much longer as they were being evicted for failure to pay rent.

Alcorta testified that with regard to employment, on the day of trial, Andrea G. showed her a pay stub. Alcorta testified that for the majority of the proceeding, Andrea G. had not been employed at all. Further, according to Alcorta, Andrea G.'s lifestyle had not changed since this case began. Alcorta testified Andrea G. had failed several random drug tests at the beginning of the proceeding. Those tests were positive for marijuana and opiates. However, Andrea G.'s more recent test results had been negative.

With regard to Mark R., Alcorta testified the service plan required him to complete parenting classes, individual counseling, have legal income and stable housing upon his release from jail, complete a drug and alcohol assessment, and complete domestic violence counseling. Mark R. was incarcerated from December 2015 to July 2016. After he was released from jail, Alcorta discussed the service plan with him and made the referrals for him to begin services. Mark R. understood his obligations under the plan. According to Alcorta, Mark R. did not show that he completed psychological services. He completed a drug assessment, but did not follow through with the recommendations made. He did not complete the domestic violence class. Further, Alcorta testified Mark R. had not shown stable employment. Mark R. had had about four or five jobs throughout the proceeding, and he had not had a stable home. Alcorta testified that Mark R. "still

has a lot to work on towards being able to parent—to be the proper parent to his children so that they have all of their basic needs met."

Alcorta testified the two oldest children were in one foster home, and the other two children were in a different foster home.[1] According to Alcorta, all three children are "doing really well," "thriving," and "excelling" in their current placements. Alcorta testified she had seen the children interact with their foster placements, and everyone is "very comfortable" with each other and "very at ease." The children "don't have any fears" and appear bonded with their foster families.

Alcorta testified Andrea G. and Mark R. had regularly visited their children and appear bonded with them. Alcorta criticized Andrea G. for safety concerns, testifying about one incident where she had to correct Andrea G. for "running around" in a stroller and not strapping in one of the young children. Alcorta also claimed Andrea G. had "taken the girls into the restroom and told them to tell" Alcorta that "they want[ed] to go home" and did not "want to be at their foster homes anymore." According to Alcorta, it would not be in the children's best interest to be returned to their parents. Alcorta explained Andrea G. and Mark R. had not shown the ability to provide a stable home or a safe environment. Neither had family support. Further, Alcorta had ongoing domestic violence concerns about Andrea G. and Mark R. Alcorta testified,

> I do believe dad empowers mom, and I think he has a little control over her. And she–if–I believe she lets him continue to control her. [She] and I actually have had this conversation, and she actually agreed with me. So, if he continues to–if she continues to allow him to control her in that manner, you know, if would be–it wouldn't be safe for the children because she will continue to stay the way it was when they first came into care.

Alcorta thus recommended that parental rights be terminated. Alcorta testified the Department's plan for the children was adoption by their present placements.

---

[1] During the pendency of this termination suit, Andrea G. was pregnant. The youngest child, an infant, was removed when she tested positive for drugs at birth. The youngest child is not part of this proceeding, but has likewise been placed in foster care.

Andrea G. testified all four of her children were in foster care. She admitted she had not sought employment during much of this proceeding, but argued that she could not work because she had been pregnant. She testified two months ago, she started working at her current job at a cleaning agency. According to Andrea G., the problems identified at her mother's home were "really just [related to] cleaning" and she now knew how to clean. Andrea G. claimed she was not involved in a relationship with Mark R., but admitted she was currently living in his apartment. According to Andrea G., she and Mark R. had separated, and he had left her in the apartment. She denied that she was being evicted, stating that the six-month lease was up at the end of the month and she was not on the lease. She did admit that she and Mark R. had fallen behind in the rent because he had lost his job. Andrea G. testified she owed $800 for the last month and had not paid the rent for the current month because she needed to save money to lease a new apartment. According to Andrea G., she had about $400 in savings. She testified she was searching for a new apartment and her father-in-law was "supposed to help" and "co-sign" a lease. She testified her salary is about $1000 per month; she also believed she would qualify for food stamps or public assistance. Andrea G. argued she did have family support and her sisters and mother-in-law would babysit the children.

Mark R. testified that with regard to his service plan, he completed his parenting class, the drug assessment, and his psychological exam. He admitted that he did not complete the domestic violence class. With regard to his living situation, he said his lease is expiring this month, and Andrea G. was going to move to a new apartment with his father's help as a co-signor. Like Andrea G., he stated that they were no longer a couple. He did not know where he was going to be living and admitted he did not have a place where his daughters could live. Mark R. testified that his daughters loved him and he loved them. He testified he had lost his job and got a new job two weeks ago. He testified he works at a restaurant and is paid $8.50 per hour.

At the end of the bench trial, the trial court made an oral ruling, stating that Andrea G.'s and Mark R.'s parental rights were terminated pursuant to section 161.001(b)(1)(O) of the Family Code for failure to comply with the provisions of a court order that specifically established the actions necessary for the mother and father, respectively, to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under chapter 262 for the abuse or neglect of the children. The trial court also stated that termination of the parents' rights was in the best interest of the children.

An Order of Termination was signed by the trial court later that day. With respect to Andrea G., the trial court's order complied with its oral pronouncement. However, with respect to Mark R., the signed order differed from the trial court's oral pronouncement. With respect to S.M.R., the trial court's order terminated Mark R.'s parental rights pursuant to section 161.001(b)(1)(O). However, with respect to S.L.R. and S.I.R., the trial court's order terminated Mark R.'s parental rights pursuant to section 161.002(b)(1) of the Family Code, which provides that the rights of alleged father may be terminated if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under chapter 160." TEX. FAM. CODE ANN. § 161.002(b)(1) (West Supp. 2017). Three months later, the trial court signed a Nunc Pro Tunc Order of Termination. In the nunc pro tunc order, Mark R.'s parental rights to his three children were terminated pursuant to section 161.001(b)(1)(O) for failure to comply with the court-ordered service plan.

## BEST INTEREST OF THE CHILDREN

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)

(West Supp. 2017). Here, Andrea G. and Mark R. both challenge the legal and factual sufficiency of the evidence to support the trial court's finding that termination of their parental rights is in their children's best interest.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citation omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citation omitted). "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citation omitted).

When a parent challenges the factual sufficiency of the evidence on appeal, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We look at all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citation omitted).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, a court

must also presume that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2017). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307, which include, but are not limited to, the child's age, and physical and mental vulnerabilities; whether the child is fearful of living in or returning to the child's home; whether there is a history of abusive or assaultive conduct by the child's family; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

In applying these statutory factors, we note that the children are very young, and there is undisputed evidence Andrea G. and Mark R. engaged in domestic violence and have a history of substance abuse. The evidence was undisputed that Andrea G. and Mark R. had not fully engaged in the services offered to them. They had not fully cooperated with the Department. The caseworker testified she had problems obtaining information about employment and living arrangements from them. She testified they would not answer the door when she attempted on multiple occasions to visit them at their current apartment. The caseworker testified the parents did not have an adequate support system, citing the need to remove the children from the maternal grandparents' home. The parents testified Mark R.'s father will co-sign on a future lease, and Andrea G. testified her in-laws and sisters would help with childcare, but the trial court was free to disbelieve this testimony.

In addition to the statutory factors above, in considering the best interest of the children, a court may also consider the factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). Those factors may include (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 372. These *Holley* factors are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

In this case, Andrea G.'s and Mark R.'s parental rights were terminated pursuant to subsection (O) of section 161.001(b)(1), which allows for termination of parental rights for failure to comply with a court-ordered service plan when the child has been removed from the parent for abuse or neglect. "Many of the reasons supporting termination under subsection O also support the trial court's best interest finding." *In re E.C.R.*, 402 S.W.3d at 249; *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding that same evidence may be probative of both section 161.001(1) grounds and best interest). Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Applying the *Holley* factors applicable in this case, we note the children are very young. There was evidence they are bonded with both their parents and their foster parents. There is

disputed evidence about whether the children wanted to go home with their parents. The caseworker testified Andrea G. had been "coaching" them in the bathroom during visitations to express to caseworkers that they wanted to return home. Thus, the children's desires are not known. Further, with regard to the children's physical and emotional needs, and physical and emotional danger to the children, the evidence is undisputed that both Andrea G. and Mark R. have engaged in domestic violence and have engaged in substance abuse. They claim to no longer be in a relationship together, but the trial court could infer from the circumstantial evidence in this case that they are still living together. Neither Andrea G. nor Mark R. have fully participated in the services offered to them. Indeed, neither has completed the required domestic violence class. Further, neither has shown the ability to provide a safe and stable home for their children. During the pendency of this case, neither parent has shown stable employment or the ability to keep a home for their children. *See In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that a parent who "lacks stability, income, and a home is unable to provide for a child's emotional and physical needs"). Finally, there was evidence that the children have bonded with their foster parents and were thriving in their current placements. There was also evidence their foster parents wished to adopt the children. We hold the evidence is legally and factually sufficient to support the trial court's best interest finding that termination of Andrea G.'s parental rights is in the best interest of the children. *See In re J.O.A.*, 283 S.W.3d at 344. We likewise hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Mark R.'s parental rights is in the best interest of the children. *See id.*

## JUDGMENT NUNC PRO TUNC

In his second issue, Mark R. argues that the trial court erred in terminating his parental rights to S.L.R. and S.I.R. pursuant to section 161.002(b)(1) of the Texas Family Code. Section 161.002(b)(1) provides that the "rights of an alleged father may be terminated if: (1) after being

served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." TEX. FAM. CODE ANN. § 161.002(b)(1) (West Supp. 2017). As noted previously, on December 21, 2017, the trial court signed a judgment nunc pro tunc, correcting its previous order of termination to comport with its oral pronouncement at trial. *See In re E.S.M.*, 550 S.W.2d 749, 752 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (explaining that "a clerical error occurs where the minutes of the court do not correctly recite the judgment actually rendered" and may be corrected by a judgment nunc pro tunc). A supplemental clerk's record has been filed containing the Nunc Pro Tunc Order of Termination. The nunc pro tunc order states that Mark R.'s parental rights are also being terminated because, pursuant to section 161.001(b)(1)(O), Mark R. "failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." Mark R. has not challenged the sufficiency of this ground of termination. Therefore, the trial court's order of termination can be upheld on this ground. *See In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (explaining that along with a best interest finding, a finding of only one ground alleged under section 161.001(b)(1) is sufficient to support a judgment of termination).

### CONCLUSION

For the reasons stated above, we affirm the trial court's order terminating Andrea G.'s and Mark R.'s parental rights.

Karen Angelini, Justice