

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00668-CV

**IN THE INTEREST OF J.N.G.** and C.Y.G.

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01667
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: March 28, 2018

AFFIRMED

Michael G. appeals the trial court's order terminating his parental rights to his two children: C.Y.G., who is two years old, and J.N.G., who is one year old. He argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in his children's best interest. With respect to C.Y.G., he argues the trial court erred in terminating his parental rights to C.Y.G. pursuant to section 161.002(b) because he clearly and unequivocally claimed to be the child's father at trial. We affirm.

### BACKGROUND

In late April 2016, the Department of Family and Protective Services received a referral alleging neglectful supervision of C.Y.G. C.Y.G.'s mother was pregnant and had been admitted to the hospital for cramping due to a ruptured placenta. Selene Mendez, a caseworker for the

Department, testified at trial that C.Y.G.'s mother admitted to using heroin while pregnant. On May 1, 2016, C.Y.G.'s mother gave birth to J.N.G., whose meconium tested positive for opiates. According to Mendez, J.N.G. had significant withdrawal symptoms and had to go through "detox" at the hospital, suffering from shaking and an inability to sleep.

Mendez testified that at first, family services were offered. Attempts were made to locate the father, Michael G. According to Mendez, in July 2016, Michael G. was found shoplifting from a store with his one-year-old child, C.Y.G., in his possession. When the police "attempted to arrest him, he ran from the police and left [C.Y.G.] in the store abandoned." Michael G. was arrested and "incarcerated for endangerment of a child and abandonment of a child without intent to return." On August 1, 2016, the underlying petition to terminate the parental rights of the mother and Michael G. was filed. Mendez testified the court-ordered service plan required Michael G. to "demonstrate stability of the home, employment, and to remain out of jail."

Mendez testified Michael G. was not incarcerated continuously during the pendency of this case. Michael G. was "released in February of 2017" but "was incarcerated again in July of 2017." Mendez testified that on July 14, 2017, Michael G. "was arrested for possession of a controlled substance, less than one gram." He remained incarcerated at the time of trial. According to Mendez, Michael G. had not attempted to contact her to engage in any services:

> The only time that I spoke to him or that he reached out to me was during the court hearing on May 30th of 2017. . . . I attempted to make contact with [Michael G.], but he left the courtroom without giving me any contact information. I contacted his attorney to see if maybe perhaps he gave her his contact information, but he did not. I reached out to him in June, again in July, and then that's when I found out that he had been incarcerated in August. He never reached out to me.

Mendez testified she visited Michael G. in jail on August 8, 2017 and asked him if he had engaged in any services while incarcerated. He replied that he did not know there were any services available. "He hadn't looked into it." Michael G. had not engaged in any services. According to

Mendez, he did not inform her that he had taken anger management classes or been enrolled in a 12-step program.

Mendez testified the children were currently with foster parents who wished to adopt them. J.N.G. has a medical condition related to his esophagus, and has had a "triple procedure" in an attempt to correct his breathing. Mendez testified J.N.G.'s condition remains ongoing and requires many appointments with specialty providers. Mendez testified J.N.G.'s current foster parents are making sure that he is getting all the proper care he needs.

According to Mendez, it would be in the best interest of the children to terminate Michael G.'s parental rights because he "has not demonstrated that he is able to take care of his children." "He has been in and out of jail throughout the whole legal case, and has never reached out to [Mendez] to see what he can do to regain custody of his children." Mendez testified Michael G. had not demonstrated he could provide a safe and stable home for the children. Nor had he demonstrated that he could refrain from illegal activity.

Michael G. testified at trial that he is the father of J.N.G. and C.Y.G. He stated he had not received a copy of his service plan. He claimed that he had reached out to Mendez "several times" but said it had been "pretty difficult" to contact her because of his incarceration. Michael G. testified he was aware of what he needed to do in this case and claimed to have taken "it upon [himself] without the service plan to go get the psych evaluation." Michael G. was then asked why he did not visit the children during the time he was not incarcerated. He replied,

> Due to the fact of the false allegations and the time that I spent in jail under that crime, or alleged crime, I lost everything and I was very unstable and I had to rebuild from ground zero, so it took me some time in order to build up some money, find residence for myself, and as well as to take care of myself.

Michael G. stated that when he was not in jail, he had been employed. He claimed to have completed "the 12 step AA [program] and anger management [class]." He further claimed to be enrolled in a parenting class. Michael G. testified to the reasons his rights should not be terminated:

> Because everything I'm going through is apparently being hit for my past. I do have *a very colorful past*. It's not the greatest, but I mean, I do learn from my mistakes. And, I mean, every time I do get pulled over by an officer—I don't want to say it's their fault, but they do kind of—they're quick to judge and look for stuff that's really not there. And the cases will—have been and will be dismissed. So the end result is, whatever takes place is going to take place for nothing.

(emphasis added).

Michael G. admitted that his current criminal charges were still pending, but claimed the previous child abandonment charge had been dismissed in February 2017. Michael G. also admitted his "colorful past" referred to his criminal history, including his arrests for several drug offenses. Michael G. testified that he was not placing blame on the Department as the reason he had not engaged in services from February 2017 to July 2017. When asked why he had not made contact with Mendez, the caseworker, Michael G. replied that he had "fall[en] out of touch with his [e-mail]." Michael G. also admitted he had been served notice with the case and had been present at the chapter 262 hearing on August 26, 2016. He admitted he did have full knowledge of what was going on in this case.

At the end of testimony, the trial court made an oral pronouncement terminating the mother's and Michael G.'s parental rights to J.N.G. and C.Y.G.[1] The trial court stated that Michael G.'s rights were terminated on "D, E, N, O" grounds, and "[i]n the alternative, failure to legitimate." The Order of Termination signed by the trial court, however, differed from the oral pronouncement. While the signed order, consistent with the oral pronouncement, terminated Michael G.'s parental rights to J.N.G. pursuant to subsections (D), (E), (N), and (O) of section

---

[1] The mother has not appealed.

161.001(b)(1), the signed order differed from the oral pronouncement with respect to C.Y.G., terminating Michael G.'s parental rights pursuant to section 161.002(b)(1). Section 161.002(b)(1) provides that the rights of an alleged father may be terminated if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under chapter 160." TEX. FAM. CODE ANN. § 161.002(b)(1) (West Supp. 2017). Four months after the trial court signed the order of termination, it signed a Nunc Pro Tunc Order of Termination. The nunc pro tunc order terminates Michael G.'s parental rights to both children pursuant to section 161.002(b)(1) and subsections (D), (E), (N), and (O) of section 161.001(b)(1).

## BEST INTEREST OF THE CHILDREN

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). Here, Michael G. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in his children's best interest.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citation omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citation omitted). "If, after conducting its

legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citation omitted).

When a parent challenges the factual sufficiency of the evidence on appeal, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We look at all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citation omitted).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, a court must also presume that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2017). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307, which include, but are not limited to, the child's age, and physical and mental vulnerabilities; whether there is a history of abusive or assaultive conduct by the child's family; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills; and whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

In applying these statutory factors, we note that the children are very young and vulnerable. In addition, J.N.G. has a significant medical condition requiring a high level of care. Michael G. has not demonstrated adequate parenting abilities, let alone the ability to care for a child with J.N.G.'s special needs. Additionally, Michael G.'s past behavior shows he makes poor decisions with respect to his children. While he was caring for C.Y.G., he was accused of shoplifting and fled, leaving his child at the scene. Further, Michael G. has not demonstrated he is willing to make positive environmental and personal changes within a reasonable period of time. Indeed, during the pendency of this case, he was released from jail, and then arrested and incarcerated shortly thereafter for possession of a controlled substance. Michael G. has also not demonstrated a willingness to complete counseling services and cooperate with the Department. He did not complete services and did not make much effort to contact the Department about this case even though he knew it was pending.

In addition to the statutory factors above, in considering the best interest of the children, a court may also consider the factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). Those factors may include (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 372. These *Holley* factors are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Additionally, in

determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Applying the *Holley* factors applicable in this case, we note the children are very young and have been placed in a foster-to-adopt home. Their current placement is meeting all their needs, including making sure J.N.G. receives the medical care he requires. As noted, Michael G. has not shown the ability to care for his children, especially one like J.N.G. who needs a high level of medical care. Michael G. has not shown the ability to provide a safe and stable home for his children. During the pendency of this case, he has been incarcerated, released, and incarcerated again. He has neither stable employment nor the ability to keep a home for his children. *See In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that a parent who "lacks stability, income, and a home is unable to provide for a child's emotional and physical needs"). We hold the evidence is legally and factually sufficient to support the trial court's best interest finding that termination of Michael G.'s parental rights is in the best interest of the children. *See In re J.O.A.*, 283 S.W.3d at 344.

**JUDGMENT NUNC PRO TUNC**

In his second issue, Michael G. argues that the trial court erred in terminating his parental rights to C.Y.G. pursuant to section 161.002(b)(1) of the Texas Family Code, which allows the rights of an alleged father to be terminated if, "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." TEX. FAM. CODE ANN. § 161.002(b)(1) (West Supp. 2017). As noted previously, on January 29, 2018, the trial court signed a judgment nunc pro tunc, correcting its previous order of termination to comport with its oral pronouncement at trial. *See In re E.S.M.*, 550 S.W.2d 749, 752 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (explaining that "a clerical error occurs where the

minutes of the court do not correctly recite the judgment actually rendered" and may be corrected by a judgment nunc pro tunc). A supplemental clerk's record has been filed containing the Order of Termination Nunc Pro Tunc. The nunc pro tunc order states that Michael G.'s parental rights to C.Y.G. are also being terminated pursuant to subsections (D), (E), (N), and (O) of section 161.001(b)(1). Michael G. has not challenged the sufficiency of these grounds of termination. Therefore, the trial court's order of termination can be upheld on any one of these grounds. *See In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (explaining that along with a best interest finding, a finding of only one ground alleged under section 161.001(b)(1) is sufficient to support a judgment of termination).

### CONCLUSION

For the reasons stated above, we affirm the trial court's order terminating Michael G.'s parental rights.

Karen Angelini, Justice